(No. 40991.—

SAMUEL O. RAGSDALE *et al.,* Appellees, *vs.* THE SUPERIOR OIL COMPANY, Appellant.

*Opinion filed May 29, 1968.*

WHAM & WHAM, of Centralia, (JOHN P. WHAM and ROBERT H. RATH, of counsel,) for appellant.

JAY B. STRINGER, of Mt. Vernon, for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The circuit court of Jefferson County dismissed plaintiffs' second amended complaint against The Superior Oil Company (Superior), the sole defendant. The Appellate

Court, Fifth District, reversed (85 Ill. App. 2d 467), and we granted leave to appeal.

Samuel O. Ragsdale purchased a 30.35-acre tract in Jefferson County in 1931. It was conveyed by sheriff's deed to Robert Ragsdale on January 29, 1934, pursuant to execution, levy and sale upon a judgment by confession entered by the circuit court of Jefferson County on September 26, 1932. Thereafter, Robert Ragsdale conveyed the fee to the tract, except one half of the minerals, to Myrle Marlow. An oil and gas lease was executed by Ragsdale and Marlow to J. V. Canterbury, who assigned it to Superior. The land is now one of 45 tracts which are pooled and operated as a single unit. The unitization agreement was executed by some 37 working interest owners under base leases, 36 being nonoperators with Superior as the operator, and by 140 mineral (royalty) owners, all of whom share in the proceeds of sale of the oil produced from the unitized tract.

The original complaint consisting of three counts was filed in behalf of plaintiff, Samuel O. Ragsdale, by his next friend and conservator, against Superior, Marlow and his wife, and the heirs and administrator of the estate of Robert Ragsdale. Counts I and II prayed for cancellation of the deed to Marlow and the Canterbury lease, or in the alternative, that plaintiff be allowed to redeem from the sheriff's sale, and count III prayed for a $500,000 judgment. Motions of the defendants to dismiss for want of necessary parties (all those participating in the oil produced and marketed from the unit) were allowed with leave to amend. An amended complaint was then filed naming as defendants all of the mineral and working interest owners, in addition to those made parties in the first complaint, praying for the same relief as that previously requested. Again, motions to dismiss were filed, but apparently before they were acted upon plaintiff filed his second amended complaint.

This complaint names only Superior as a defendant and is silent as to the factual allegations upon which the first

two complaints were based. It alleged appointment of Robert Reed as conservator of plaintiff on November 18, 1964, and the purchase of the 30.35-acre tract by Samuel O. Ragsdale in 1931 for $3,000. The only other allegations were "That the said Samuel O. Ragsdale was and has ever since been the owner of the above described real estate in fee simple, including all oil and gas underlying said premises," that shortly after September 11, 1943, Superior "wrongfully and wilfully" entered upon the premises, extracted 150,000 barrels of oil and converted the oil to its own use to the damage of $500,000 to plaintiff, the amount of the *ad damnum*. The trial court held that all of the mineral leasehold owners were necessary and indispensable parties and dismissed on that ground.

As noted, the complaint relates acquisition of the land many years ago, but is completely silent as to subsequent conveyances of record title alleged in earlier complaints or in Superior's motion to dismiss. While the prayer is for a money judgment, there can be no recovery without allegation and proof of ownership. This appeal is from the order of June 29, 1966, holding that necessary parties were omitted and dismissing the second amended complaint upon which plaintiff elected to stand.

A unitization of separate tracts for the purpose of sharing in the production of oil creates a single ownership of the entire unit by the owners of the several tracts making up the unit, subject to the terms of the oil and gas leases. Similarly, when the lessees of the separate leasehold tracts making up the unit join in the unitization for the purpose of operation and production of oil, a single leasehold ownership is created of the unitized tract. The oil produced is pooled, regardless of the separate tract or tracts upon which the wells are located and from which the oil is produced. They all share in the oil produced, saved and sold in the proportion which each owner's tract bears to the entire unitized tract. For all practical purposes the same situation

exists as though there was a single owner-lessor and a single lessee.

An example will serve to illustrate the ridiculous consequences which could follow from voiding the sheriff's deed and subsequent transfers in the chain of title. Assuming *arguendo* that the well, or even one of several, is on the tract in question and title failed. The production would belong to the successful litigant rather than to the record owners. The unitized tract would be broken and every party owning an interest in it would be adversely affected.

The trial court could not reach the merits unless and until all owners and lessees, necessary and indispensable parties, were made parties to the proceedings. (*Texas Company* v. *Hollingsworth,* 375 Ill. 536.) "It has also been said that a necessary party is one who has such an interest in the matter in controversy that it cannot be determined without either affecting that interest or leaving the interest of those who are before the court in a situation that might be embarrassing and inconsistent with equity." (*Georgeoff* v. *Spencer,* 400 Ill. 300, 302 and 303.) Many Federal cases have similarly interpreted our law in this field. (See *e.g., Calcote* v. *Texas Pacific Coal & Oil Co.* (5th cir.), 157 F.2d 216; *Hudson* v. *Newell* (5th cir.), 172 F.2d 848; *Hilton* v. *Atlantic Refining Co.* (5th cir.), 327 F.2d 217.) *Stumpf* v. *Fidelity Gas Co.* (9th cir.) 294 F.2d 886, gives no comfort to plaintiff. There, the distribution of proceeds allocated to one tract of the unitized area was involved, and the rights of none of the other owners of the unitized tract were affected. Should plaintiff be successful in this litigation the practical effect, as heretofore noted, would be to void the lease upon the disputed tract. The effect on the remaining owners of the unit would be direct and substantial.

Plaintiff has an insurmountable hurdle to negotiate in the posture of this case. He elected to lay his action at law rather than in equity, apparently in an effort to avoid proving title. As presented, this action is in the nature of tres-

pass. But, an action in trespass for damages to the freehold or for severance and conversion of part of the freehold cannot be maintained by the alleged owner while another is in possession claiming adversely. (*Fort Dearborn Lodge* v. *Klein,* 115 Ill. 177; *Cook* v. *Foster,* 7 Ill. 652.) Before maintaining trespass plaintiff would have to recover possession through an ejectment action. In such a case he would have to recover on the strength of his own title, not on the weakness of that of his adversary. *Thompson* v. *McGrue,* 3 Ill.2d 168.

No matter which remedy he chose to pursue, in equity or at law, plaintiff had to make all owners and lessees in this suit parties since his claim was contrary to the record chain of title and that would necessarily throw title into dispute. Furthermore, in either case, he had the burden of alleging and proving his title.

Finally, plaintiff suggests that even if the other owners and lessees are necessary and indispensable parties under the law as it now exists, justice requires that it be changed, under modern law, primarily because of cost and inconvenience. *Suvada* v. *White Motor Co.,* 32 Ill.2d 608, and *Molitor* v. *Kaneland Com. Unit Dist.,* 18 Ill.2d 11, are cited as examples of deviation from *stare decisis.* Entirely different situations were there presented reflecting revolutionary changes by movement from rural to urban economies. No such urgent change in settled law is indicated in this case.

The judgment of the Appellate Court, Fifth District, is reversed and the judgment of the circuit court of Jefferson County is affirmed.

*Appellate Court reversed; circuit court affirmed.*