305 S.E.2d 311

**Ernie C. DONAHUE, et al.**

v.

**George BILLS, Jr., et al., and L & M Oil Co.**

**No. 15532.**

Supreme Court of Appeals of West Virginia.

July 8, 1983.

Menis E. Ketchum, Greene, Ketchum, Bailey & Tweel, Huntington, for appellants.

James M. Powell, Hardman & Powell, Parkersburg, for George Bills, Jr.

---

Richard A. Hayhurst, Davis, Davis, Hall & Clovis, Parkersburg, for L & M Oil Co.

PER CURIAM:

In 1976 George and Jeanne Bills conveyed approximately 333.25 acres located partly in Pleasants County and partly in Wood County to Ernie and Laura Donahue. The several deeds, by which the conveyance was made, reserved to the grantors "one-half of all minerals underlying the soil, with the right to lease, enter on said premises, prospect, and explore and drill for, and mine, excavate and remove the same with all machinery, appliances, fixtures and things necessary or convenient therefore." In 1978 Mr. and Mrs. Bills availed themselves of the reserved right to lease by entering into a lease of oil and gas with one Ray Dietz, who later assigned the lease to appellee, L & M Oil Company. An oil and gas well was subsequently drilled on the property.

Mr. and Mrs. Donahue brought suit in 1979 in the Circuit Court of Pleasants County to enjoin L & M Oil Company and Gene Stalnaker, the driller, from drilling on their land and to enjoin George and Jeanne Bills from leasing their land without their consent. The circuit court awarded summary judgment to the oil company, driller, and Mr. and Mrs. Bills on the basis of the language of the reservation clause in the deed. We affirm.

The principal question before us is whether the circuit court was correct in finding that Mr. and Mrs. Bills, the grantors, reserved the right to lease the minerals conveyed to the appellants.

In *West Virginia Department of Highways v. Farmer*, 159 W.Va. 823, 226 S.E.2d 717, 719 (1976), we stated:

"It has long been held that where language in a deed is unambiguous there is no need for construction and it is the duty of the court to give to every word its usual meaning. 5 M.J., Deeds, § 66. See also *Burdette v. Bruen*, 118 W.Va. 624, 191 S.E. 360 (1937), and *Tate v. United Fuel Gas Co.*, 137 W.Va. 272, 71 S.E.2d 65 (1952). However, where an ambiguity is introduced by the restrictive language, making unclear the intention of the grantors in reserving minerals from a conveyance, construction of the language is in order and the surrounding circumstances and actions of the parties may be considered. *Burdette v. Bruen, supra.*"

We think that the language in the reservation in the case before us makes clear the intent of the parties that the grantors were reserving the right to lease the minerals under the land conveyed. Appellants assert that a cotenant may not lease the interest of his cotenants, see *Freeman v. Egnor*, 72 W.Va. 830, 79 S.E. 824 (1913). We agree that under ordinary circumstances this principle applies. However, in this case the grantor specifically reserved the right to lease. Clearly, he had the right to lease his own one-half interest and if that is all he had intended to do, the language of the reservation would have been meaningless and useless surplusage.

■ This case is actually remarkably simple: the reservation clause in the deed that permits the Bills to enter into leases constitutes an agency coupled with an interest. *See generally, Annot.*, 28 A.L.R.2d 1243 (1953). In oil and gas law this ancient device is known as the "executive right". The circuit court sustained the defendants' summary judgment motion below on the grounds that:

"[T]he reservation contained in the deeds to the plaintiffs reserving one-half of all minerals underlying the soil, with the right to lease, allows the defendants to enter into leases of that mineral without the consent or written signature of the plaintiffs to any lease thereof, and that the defendants have the right to execute leases for the plaintiffs one-half of the mineral underlying the soil; and that any other interpretation would make the reservation meaningless...."

Often complicated business transactions require the acquiescence of numerous persons making negotiations unwieldy and uncertain. The agency coupled with an interest has numerous uses, but one of those uses is to guarantee in advance, by an appropriate agreement, that parties who

must acquiesce to the consummation of a business deal will do so at the appropriate time and in the appropriate form. In the case before us, it was obviously contemplated by the parties when they entered into the deeds in question that the Bills would be allowed to conduct negotiations on behalf of the Donahues in order to facilitate a harvesting of the mineral interest.

Furthermore, there is nothing unreasonable about such an arrangement: it is common experience that when oil and gas interests are owned by numerous persons, negotiating a lease acceptable to all owners can be a nightmare for everyone concerned. The protection that the Donahues receive is that any lease entered into under unfavorable terms by the Bills will deny the Bills fully as much as the Donahues a fair return to their jointly owned property.

Neither the briefs nor the record in this case raises the issue of the obligations of an agent to make an accounting under circumstances like the ones before us. However, some discussion of the problem of an accounting occurred in oral argument before this Court. The summary judgment on the validity of the Bills' right to lease does not foreclose further proceedings to guarantee a fair accounting of the proceeds. Although the Bills have the right to lease, they are entitled only to one-half of the proceeds of the rental payments. Furthermore, the Bills must share any fees or other inducements they may receive for entering into a lease with the Donahues on a fifty-fifty basis. In effect, the Bills are fiduciaries for the Donahues and will be held to strict fiduciary standards. The Bills have no authority in the instrument to "sell" their right to enter into a lease, although they are entitled to reasonable out-of-pocket expenses, such as lawyers' fees, etc.

■ In syllabus point 3 of *Aetna Casualty and Surety Co. v. Federal Insurance Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963), we said:

"A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts

is not desirable to clarify the application of the law."

■ Applying this principle to the facts of the case before us, we conclude that the circuit court was correct in granting the defendants' motion for summary judgment.

Accordingly, the judgment of the Circuit Court of Pleasants County is affirmed.

Affirmed.