LITTLE COAL LAND COMPANY

*v.*

OWENS-ILLINOIS GLASS COMPANY, *et al.*

(No. 10288)

Submitted January 17, 1951.  Decided February 6, 1951.

*Rummel, Blagg & Stone,* for plaintiffs in error.

*Spilman, Thomas & Battle, W. Victor Ross,* and *Howard R. Klostermeyer,* for defendant in error.

RILEY, JUDGE:

Little Coal Land Company, a West Virginia corporation, instituted in the Circuit Court of Kanawha County this action of assumpsit against the defendants, Owens-Illinois Glass Company and Libbey-Owens-Ford Glass Company, both Ohio corporations, and successors in title to The Owens Bottle Company, also an Ohio corporation, which corporations were authorized to hold property and transact business in the State of West Virginia, to recover the sum of $1,543.25, one quarterly installment of "land rent" on a lease dated November 3, 1921, between the plaintiff, Little Coal Land Company and The Owens Bottle Company, covering a tract of land consisting of 6,173 acres, upon which the lessees had drilled thirty-eight wells, most of which were producing. This writ of error is prosecuted to a judgment of the circuit court based upon

the court's instruction to the jury to find for the plaintiff in the amount sued for with interest.

The pertinent provisions of the lease are as follows:

"WITNESSETH: Section 1. * * * the said Lessor has leased and granted, and by these presents does lease and grant, unto the Lessee, for the period of time and on the terms and conditions hereinafter specified, all of the oil, gas and casing-head gas, in, upon and under that certain tract or parcel of land * * * containing in aggregate six thousand four hundred and seventy-three (6,473) acres, more or less, of which three hundred (300) acres is reserved from this lease * * *.

"With the right to possess and use so much of said lands as may be reasonably necessary for such operations, and to use gas and water from said lands in said operations * * *.

* * *

"Section 3. Said Lessee agrees to pay to said Lessors as rent for this lease, until oil or gas is found in paying quantities on the demised premises, and until the Lessors receive for oil, gas and casing-head gas the amount hereinafter mentioned, the sum of one dollar per acre per year for each acre *not released by the drilling of wells, as hereinafter provided,* payable in quarterly installments in advance and the first quarter shall be considered as commencing on the date hereof; but when in any quarter the sum or sums of money received by the Lessors from the sale of one-eighth oil royalty and the royalty to be paid for gas and casing-head gas, as hereinafter specified, shall equal or exceed the said sums of money to be paid as land rent, then in that event the Lessee shall not pay such land rent; and in any quarter when the Lessors receive royalties for oil, gas or casing-head gas Lessee shall have a proper credit for the amount paid in advance for such quarter as land rent, and if in any quarter the oil, gas or casing-head gas royalties to which the Lessors are entitled do not equal the land rental for such quarter then the payment of land rent for such quarter shall be a payment in satisfaction of all such royalties.

"Section 4. The drilling of each producing well for oil or gas on the said premises shall release three hundred (300) acres thereof, *on which no rental shall be paid.* Provided, however, that said land rentals shall be paid until the oil and gas is being piped from said lands, *or* until such time as the oil and gas royalties equal the land rental on the entire boundary.

\* \* \*

"Section 8. If the Lessee fails at anytime to drill and utilize wells for the protection of the demised premises, as provided in Section 6 above, and such failure shall continue ninety (90) days after notice given by the Lessor to the Lessee, this lease and the estates hereby created, and all the rights and privileges of the Lessee hereunder, shall, at the election of the said Lessor, be forfeited and become null and void as to all the demised premises and every part thereof, except always that there shall be saved and reserved from any such forfeiture a plat of ground around each well which may be producing oil, gas or casing-head gas in paying quantities at the time of such forfeiture, which plat of ground shall be laid off in the form of a square around each such producing well as the center having *in* East & West line as its base of such square, and which square shall contain three hundred acres; and if by reason of the proximity of two or more such wells said three hundred acre plats of ground interlock, all loss of acreage occasioned by such interlocking shall be borne by the Lessee; said three hundred acre plats of ground to be laid off by Lessee by survey, and a plat with metes and bounds thereof furnished the Lessor by Lessee; and as to all parts of the demised premises which may be so saved from forfeiture, all terms of this lease shall continue and be in force, except that such parts shall not thereafter be subject to any land rental, or be thereafter subject to forfeiture for failure to drill additional wells, so long as the oil and gas royalties produce yearly as much as One ($1.00) Dollar per acres. It is understood and agreed by the parties hereto that after the party of the second part has fully explored and drilled said property for oil and gas, and the oil and gas, if there be any, is being re-

moved from the said property, the said second party shall not be required thereafter to pay any further land rental.

\* \* \*

"Section 10. The Lessee shall have the right at any time, upon the payment of all rentals and royalties and sums of money due or accrued to the Lessor, to retain three hundred acres around each well drilled as hereinbefore stated and surrender the residue of the demised premises by delivering to the Lessor a proper instrument in writing duly executed and acknowledged by *him* for record, describing the part so surrendered and the number of acres therein; and upon such surrender being so made there shall be deducted from the said land rental the sum of One ($1.00) Dollar for each acre so surrendered; but such surrender shall in no way affect the royalties or sums of money hereinbefore provided to be made or paid for oil, gas and casing-head gas from any well on any part of the demised premises not so surrendered." (Italics supplied).

Notwithstanding the lease was dated November 3, 1921, the first well was not turned into the pipe line until February 4, 1929. On December 6, 1944, the twenty-first well was turned into the line. From November 3, 1921, until May 3, 1949, the defendants have paid to the plaintiff the sum of $6,173.00 a year in quarterly installments of $1,543.25. The royalties paid to lessor at no time equalled or exceeded the land rental. Some time between March, 1949, and June 15, 1949, the defendants entered into negotiations with plaintiff in an attempt to eliminate the provisions of the lease, requiring the yearly rental of $6,173.00, and in lieu thereof to place the lease on a straight royalty basis of one and one-half cents a thousand cubic feet of gas produced from the lease. These negotiations having failed, defendants' general manager, Leo Kohlbecker, advised plaintiff that under Section 4 of the lease, lessee had alternative methods of becoming relieved of the rental, namely: (1) That 300 acres surrounding the producing wells should be released when gas in paying quantities was piped from said well; or (2)

that the obligation to pay rental should cease at any time that the royalties, irrespective of the size or number of the wells, should equal the rental at the rate of $1.00 an acre on the entire boundary, or $6,173.00.

Defendants then took the position that since the twenty-first well had been turned into the line on December 6, 1944, they were released from the payment of any rental under the first alternative, because twenty-one times 300 equals 6,300, which is slightly in excess of the acreage of the leasehold, though royalties have never equalled the land rental on the entire boundary. On the basis of this defendant, charging the plaintiff with having received overpayments of land rental in the amount of approximately fifty thousand dollars, discontinued payments of the land rental and tendered checks to the plaintiff on the basis of the actual production of the wells at the royalty rate of one cent a thousand cubic feet. Plaintiff refused to accept the royalty checks and this action was instituted to recover the quarterly installment of rent alleged to be due under the lease on August 3, 1949.

The trial court rejected defendants' contention, and instructed the jury to find for the plaintiff.

Counsel for plaintiff assert that the lease should be construed as a whole, and that the lease requires the payment of the minimum annual rental of $6,173.00 until such time as the royalties equal the land rentals on the entire boundary, or until the leasehold has been fully developed, as required by Section 8; that the words "and" and "or", being interchangeable in order to effectuate the intent of the parties, the word "or", separating the alternative provisions in the proviso of Section 4, should be read as "and"; that the lease being ambiguous, the defendants by their actions under the lease during the period of twenty years have placed a practical construction upon it by which they are now bound.

From a careful examination of the provisions of this lease we are of the opinion that it is not ambiguous in any of its terms. In Section 3 the lessee agreed to pay to

lessor, as rent for said lease until oil *or* gas is found in paying quantities, and until the lessor should receive from the oil, gas and casinghead gas the amount thereinafter mentioned, the sum of $1.00 an acre a year for each acre "not released by the drilling of wells, as hereinafter provided, payable in quarterly installments in advance and the first quarter shall be considered as commencing on the date" of the lease. Section 3 further provides that "When in any quarter the sum or sums of money received by the lessor from the sale of one-eighth oil royalty and the royalty to be paid for gas and casinghead gas, as hereinafter specified, shall equal or exceed the said sums of money to be paid as land rent, then in that event the Lessee shall not pay such land rent; * * *."

It is to be noted that Section 3 of the lease specifically provides that the lessor shall receive for oil, gas and casinghead gas the so-called land rental on each acre of land "not released by the drilling of wells, as hereinafter provided". This necessarily brings this Court to a consideration of Section 4 of the lease, which reads: "The drilling of each producing well for oil or gas on the said premises shall release three hundred (300) acres thereof, on which no land rental shall be paid. Provided, however, that the said land rentals shall be paid until the oil and gas is being piped from said lands, *or* until such time as the oil and gas royalties equal the land rental on the entire boundary." (Italics supplied)

Section 8 of the lease is a mere forfeiture clause, and Section 10 provides for abandonment of parts of the acreage released by the lessee. The pertinent provision of this section reads: "The Lessee shall have the right at any time, upon the payment of all rentals and royalties and sums of money due or accrued to the Lessor, to retain three hundred acres around each well drilled as hereinbefore stated and surrender the residue of the demised premises by delivering to the Lessor a proper instrument in writing duly executed and acknowledged by *him* for record, describing the part so surrendered". The provisions of Section 8 as to forfeiture and of Section 10 as to

abandonment are distinct as between themselves and from Sections 3 and 4. That being so, it is quite difficult for this Court to perceive any ambiguity in the terms of the lease under scrutiny. Section 3 of the lease by the use of the words "each acre not released by the drilling of wells *as hereinafter provided*" (italics supplied) refers to Section 4, which is the only section which provides for the release *pro tanto* on the basis of three hundred acres of the leasehold for each producing well for oil or gas. Section 4 specifically provides that the drilling of each producing well "shall release three hundred (300) acres thereof, on which no land rental shall be paid. Provided, however, that said land rental shall be paid until oil and gas is being piped from said lands, or until such time as the oil and gas royalties equal the land rental on the entire boundary."

The circuit court, in the appraisement of this lease, has indicated by its instruction to the jury, directing a verdict in plaintiff's favor, that, in the proviso clause "that said land rentals shall be paid until the oil and gas is being piped from said lands, or until such time as the oil and gas royalties equal the land rental on the entire boundary", the word "or", separating the alternative provisions of the clause should be construed as "and". With this construction we do not agree. We say this because Section 8 as to the forfeiture of the lease, and Section 10 as to abandonment have no connection with Section 4, which provides for the release of the rental on an acreage basis. It is the considered position of this Court that, upon the drilling of each producing well from which oil or gas is being piped, 300 acres of the leasehold shall be released from the payment of any rental. If either one of the two conditions set forth in the proviso clause of Section 4 occurs, namely, that oil or gas is being piped from twenty-one producing wells or until such time as the royalties equal the rental on the entire boundary, the rental will be released on the entire acreage. At this point we say that the word "and" separating the words "oil" and "gas" in the proviso clause should be construed as

"or" for the reason that Section 4 provides for a release on an acreage basis for each well producing "oil *or* gas" (italics supplied).

In the instant case, as disclosed by this record, the first condition of the proviso clause of Section 4 clearly has occurred. Thirty-eight wells have been producing gas from the land in question, and the gas therefrom has been piped from the lands. The second of the two conditions contained in the proviso clause has not occurred, because the royalties have not equalled "the land rental" on the "entire boundary."

We, therefore, are of opinion that we are not at liberty to consider Sections 8 and 10 of the lease, which deal specifically with the distinct subject matters of forfeiture and abandonment, on the question of the release of the rentals under the provisions of Section 4 of the lease by the drilling of producing wells.

As this Court appraises this lease, which we think is clearly unambiguous, and, therefore, not subject to a practical construction by the parties, the land rental was and is released by the drilling of the twenty-first well, and the piping of gas from the lands, notwithstanding the royalties have not equalled the so-called land rentals.

Under this appraisal of Section 4 of the lease the rentals were released when the gas from the twenty-first well had been piped from the land. Under the construction of this lease, as this Court now reviews it, the land rentals would be released when the gas from twenty-one wells had been piped into the line, or when the royalties have exceeded the rentals, or when, under Section 8 of the lease, after the lessee "has fully explored and drilled the property for oil and gas, and the oil and gas, if there be any, has been removed from said property", in which event the lessee "shall not be required thereafter to pay any further land rental." Clearly, there has been no full exploitation, as contemplated by Section 8 of the lease, nor have the royalties exceeded the rental; but twenty-

one wells producing gas have been piped into the line. This necessarily results, under the construction of this unambiguous lease that there has been a complete release of the rental with the drilling of the twenty-one producing gas wells from which gas has been piped.

That being so, it is not true, as plaintiff's counsel assert, that the construction of Section 4 contended for by defendants' counsel is inconsistent with Sections 8 and 10 of the lease, and that such construction "is in the very teeth" of the provision of Section 8, which provides that "after the party of the second part has fully explored and drilled said property for oil and gas, and the oil and gas, if there be any, is being removed from the said property, the said second party shall not be required thereafter to pay any further land rental." Section 8 of the lease, as heretofore suggested, is the forfeiture clause thereof. It has no connection with the release of the rentals by the drilling of producing wells, as contained in Section 4, read in connection with Section 3 thereof. It follows that the lease in question, being free from ambiguity either latent or patent, should be construed in the express terms thereof, without regard to the actions of the parties thereunder.

There is no absurdity in the position that when twenty-one wells have been drilled and piped, the rental ceases though the royalties have not equalled or exceeded the rental. Certainly it is not true that, under the provisions of this lease, the royalties must exceed the rental before there is a release thereof, for the simple reason that the use of the disjunctive word "or" contained in the proviso clause of the lease indicates that the parties when they entered into this lease, clear and unambiguous as it is in its very terms, knew exactly what contract they were making; and if twenty-one wells had been drilled and piped into the lines under the specifc terms of Section 4, the land rental would be released, though the production of oil and gas may not have produced sufficient royalties to equal the land rentals. Be that as it may, if twenty-one producing wells had been drilled, and the gas pro-

duced therefrom had been piped, as this record discloses is true, under the first condition of the proviso clause of Section 4 of the lease, the rentals under the terms of the lease should cease. Equally it is true that if one or more producing wells had been drilled and piped, and the royalties therefrom had equalled or exceeded the rental, the rental would cease under the second alternative of the proviso clause of Section 4.

As this action of trespass on the case in assumpsit is for the recovery of the amount of a quarterly installment of rental, upon which the action is based, it is of no moment that the parties in their so-called practical construction of the contract made a mistake of law in the practical appraisement and construction of the contract, as this is not an action for the recovery of the sum of more than fifty thousand dollars, which, it is alleged, the defendants overpaid because of the practical construction of the lease by the parties.

We therefore hold that the defendants not having under Section 10 of the lease undertaken to surrender any part of the leasehold, and there being no element of forfeiture under Section 8 of the lease, plaintiff, Little Coal Land Company, is not entitled in the instant action of trespass on the case in assumpsit to recover the alleged indebtedness of two thousand dollars, as set forth in its declaration; and, therefore, the judgment of the circuit court in entering judgment in the amount of $1,543.25, based upon a directed verdict, should be and the same is reversed.

*Judgment reversed;*
*verdict set aside;*
*new trial awarded.*