# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**September 2020 Term**

_____

**No. 19-0347**

_____

**FILED**
**November 18, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ASCENT RESOURCES – MARCELLUS, LLC,**
**Plaintiff Below, Petitioner**

**v.**

**DONALD E. HUFFMAN and**
**TRIPLE L LAND AND MINERAL, LLC,**
**Defendants Below, Respondents**

_____

**Appeal from the Circuit Court of Tyler County**
**The Honorable Jeffrey D. Cramer, Judge**
**Civil Action No. 16-C-25-C**

**AFFIRMED**
_____

**Submitted: October 7, 2020**
**Filed: November 18, 2020**

Kenneth E. Tawney, Esq.
Dale H. Harrison, Esq.
Thomas J. Hurney, Jr., Esq.
Jackson Kelly PLLC
Charleston, West Virginia
Counsel for the Petitioner

Jeremy B. Cooper, Esq.
Blackwater Law PLLC
Aspinwall, Pennsylvania
Counsel for the Respondents

**JUSTICE HUTCHISON delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "A circuit court's entry of a declaratory judgment is reviewed *de novo*." Syllabus Point 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995).

2. "An oil and gas lease (or other mineral lease) is both a conveyance and a contract. It is designed to accomplish the main purpose of the owner of the land and of the lessee (or its assignee) as operator of the oil and gas interests: securing production of oil or gas or both in paying quantities, quickly and for as long as production in paying quantities is obtainable." Syllabus Point 1, *McCullough Oil, Inc. v. Rezek*, 176 W. Va. 638, 346 S.E.2d 788 (1986).

3. "A deed will be interpreted and construed as of the date of its execution." Syllabus Point 2, *Oresta v. Romano Bros., Inc.*, 137 W. Va. 633, 73 S.E.2d 622 (1952).

4. A lease will be interpreted and construed as of the date of its execution.

5. "An oil and gas lease which is clear in its provisions and free from ambiguity, either latent or patent, should be considered on the basis of its express provisions and is not subject to a practical construction by the parties." Syllabus Point 3, *Little Coal Land Co. v. Owens-Illinois Glass Co.*, 135 W. Va. 277, 63 S.E.2d 528 (1951).

6.	"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."  Syllabus Point 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962).

7.	"It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them."  Syllabus Point 3, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962).

ii

**HUTCHISON, Justice**:

In this appeal from the Circuit Court of Tyler County, we are asked to review an order denying an oil and gas drilling company's motion for a declaratory judgment. In the order, the circuit court refused to imply into an existing oil and gas lease a covenant to pool and unitize the lease with nearby mineral estates.

We find no error in the circuit court's order. In the absence of language in an oil and gas lease showing the parties contemplated that a lessor has a right to pool and unitize the lease with other estates, the circuit court correctly concluded that there can be no implied covenant to pool or unitize.

## I. Factual and Procedural Background

This case concerns a ninety-four-acre tract of land in Tyler County. Defendants below Roy D. Haught and Betty Hadley owned a 50% interest in the oil and gas mineral estate beneath the tract. The defendants have since conveyed an unknown portion of their estate to Donald E. Huffman and Triple L Land and Mineral, LLC, who are now acting in the place of the defendants in this appeal. On February 6, 1980, the defendants' predecessor in interest executed an oil and gas lease permitting the drilling of wells on the tract to produce oil and gas. The 1980 lease is still in effect because wells on the tract continue to produce oil and gas.

1

Plaintiff Ascent Resources – Marcellus LLC[1] ("Ascent") owns the other 50% interest in the oil and gas estate. Furthermore, Ascent has since become the successor in interest to the 1980 lease. Hence, Ascent holds the sole right to drill wells on the tract and to produce oil and gas.

On June 8, 2016, Ascent brought an action against the defendants seeking a declaratory judgment regarding the 1980 lease. Ascent sought a declaration that the 1980 lease contained an implied covenant to pool or unitize the lease with other mineral interests. Ascent declared that it wanted to drill modern, horizontal well bores into the Marcellus shale formation beneath the tract, hydraulically fracture the shale, and produce oil and gas. However, Ascent contended that oil and gas could only be economically produced from the Marcellus shale formation if the "drilling units" are large enough to accommodate a well bore that extends horizontally at least 2,500 feet in length. Ascent maintains that the parties' ninety-four-acre tract, operating alone, is too small to support the drilling of the horizontal well bore.

In its declaratory judgment complaint, Ascent admitted that the 1980 lease only granted Ascent the right to drill, develop, and operate for oil and gas on the ninety-four-acre tract. Ascent also admitted that there is no language in the 1980 lease expressly

---

[1] The record indicates that Ascent Resources—Marcellus, LLC is now known as Tribune Resources, LLC, and is a wholly-owned subsidiary of Tribune Resources, Inc.

permitting Ascent to unitize or pool the lease with other nearby mineral interests to create

a drilling unit large enough to justify exploiting the shale formations.[2]

To enable Ascent to economically drill the horizontal well bore, it asked the

circuit court for a declaration that the 1980 lease contained an implied covenant to unitize

or pool the lease with other mineral interests. Ascent sought the implied right given that

---

[2] Although related, "pooling" and "unitization" have different meanings in the context of oil and gas operations:

> Generally speaking, pooling arises from the bringing together of tracts of land for oil and gas drilling based primarily upon the allowable spacing of wells. The focus of unitization, however, is more directly on the geologic nature of the underlying oil and gas reservoir and enhanced-recovery techniques. *See* James E. McDaniel, *Statutory Pooling and Unitization in West Virginia: The Case for Protecting Private Landowners*, 118 W.Va. L. Rev. 439, 455 (2015) (Although "pooling" and "unitization" are often used interchangeably, pooling occurs "when separately owned tracts of land are 'pooled' or joined together in order to comply with spacing requirements or to have sufficient acreage with which to obtain a well permit." By contrast, the goal of unitization "is to consolidate enough of the interests in a particular reservoir to allow production to be carried out in the most efficient manner[.]"). *See also* Patrick H. Martin and Bruce M. Kramer, *Williams & Myers, Oil and Gas Law*, § 901 (LexisNexis Matthew Bender 2016) ("'[P]ooling' means the bringing together of small tracts sufficient for the granting of a well permit under applicable spacing rules whereas 'unitization,' or, as it is sometimes described, 'unit operation,' means the joint operation of all or some part of a producing reservoir.").

*Gastar Expl., Inc. v. Contraguerro*, 239 W. Va. 305, 307 n.1, 800 S.E.2d 891, 893 n.1 (2017).

modern leases often have language that allows lessees to aggregate mineral interests to create drilling units sufficient in size to support drilling in shale formations.

Ascent subsequently filed a motion for summary judgment, asserting that there were no questions of material fact existing for resolution. Ascent asked the circuit court to declare that pooling and unitization are reasonably necessary to develop the minerals, and that pooling and unitization would place no unreasonable burden on the owner of any interest in the ninety-four-acre tract. Furthermore, Ascent, as lessee of the mineral and gas rights, requested a declaration adding five paragraphs to the parties' 1980 lease. Specifically, Ascent moved the circuit court for an order

> declaring that Ascent has the implied right to pool and unitize the Subject Lease with other mineral leases or mineral interests as a necessary adjunct to its right to drill and operate the premises for oil and gas upon the following terms and conditions:
>
> 1. Lessee shall have the right to pool, unitize, or combine all or parts of the Leasehold with other lands, whether contiguous or not contiguous, leased or unleased, whether owned by Lessee or by others, at a time before or after drilling, to create drilling or production units.
>
> 2. Pooling or unitizing in one or more instances shall not exhaust Lessee's pooling and unitizing rights, and Lessee shall have the right to change the size, shape, and conditions of operation of any unit created and to make concomitant changes in payments.
>
> 3. Lessee shall allocate production from each well in a unit among each of the leases in the unit as a percentage of that leasehold's acreage in the unit compared to the total leasehold acreage in the unit. Lessee shall then pay the royalties specified in each lease based upon the sale price of the production allocated to that lease.

4

4. Drilling, operations in preparation for drilling, production, shut-in production from the unit, or payment of royalty on any part of the unit (including non-Leasehold land) shall have the same effect upon the terms of the Subject Lease as if a well were located on, or the subject activity were attributable to, the Leasehold.

5. Lessee shall record among the land records of the county the declaration of pooling and any amendments thereto and attempt to furnish a copy to Lessor or their known successors and assigns, although failure to furnish a copy to any Lessor shall not operate to void or terminate any drilling unit that has been formed.

In support of its request that the circuit court incorporate these five terms and conditions into the 1980 lease, Ascent attached an affidavit from an energy development expert. The expert opined that the terms "are customary today in the oil and gas industry for pooling." Another affidavit attached to the motion attested that the parties' ninety-four-acre tract had insufficient space to support drilling a horizontal well in a shale formation, and that the 1980 lease must be pooled with other mineral interests to create a drilling unit large enough to accommodate horizontal drilling. [3]

In an order filed March 5, 2019, the circuit court found the 1980 lease did not grant Ascent an express right to pool or unitize the lease with other oil and gas interests. More importantly, the circuit court found that nothing in the lease was unclear or

---

[3] Ascent also attached a declaratory judgment order signed by a different circuit judge in Tyler County in a different case. That order (which involved a predecessor corporation of Ascent) implied into a lease a right to pool or unitize the lease and implied the five new terms into the lease. *American Energy – Marcellus, LLC v. Mary Jean Templeton Poling, et al.*, Tyler Co. No. 15-C-34-H (April 15, 2016).

unambiguous regarding pooling and unitization. The circuit court concluded that, in the absence of ambiguity, there is nothing for the circuit court to interpret and, therefore, that the court was powerless to write a new or different contract for the parties. Furthermore, the circuit court found that implying a covenant of pooling and unitization would impose burdens upon the estate that were never bargained for or contemplated by the parties in 1980 and are not reflected in the terms of the lease. Hence, the circuit court refused to imply a new covenant into the 1980 lease permitting pooling and unitization, and refused to imply the five "customary" terms and conditions regarding pooling and unitization that Ascent sought to have judicially incorporated into the lease. The circuit court denied the motion for summary judgment and rejected Ascent's request for a declaratory judgment.[4]

Ascent now appeals the circuit court's order.

## II. Standard of Review

Because the purpose of a declaratory judgment action is to resolve legal questions, "[a] circuit court's entry of a declaratory judgment is reviewed *de novo*." Syl. pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995). *See also*, Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.").

---

[4] The circuit court also denoted the order as a final judgment pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure, to permit Ascent to appeal the order.

6

## III. Discussion

Ascent argues that it presented affidavits to the circuit court and that the defendants offered nothing to refute the evidence in those affidavits. Ascent claims that these facts establish that it cannot develop the oil and gas in the Marcellus shale formation without pooling or unitizing the 1980 lease with other mineral interests in nearby tracts. Because the circuit court failed to adopt Ascent's uncontroverted facts, Ascent contends that the circuit court committed clear error.

Furthermore, Ascent argues that the circuit court erred in finding the 1980 lease was "clear and unambiguous." Ascent admits that the lease is silent regarding pooling, unitizing, and technologically-advanced drilling methods, but it argues that the silence actually created an ambiguity. In other words, Ascent maintains the circuit court should have equated silence with ambiguity and then determined whether there was an inchoate or implied right to pool or unitize in the 1980 lease.

Finally, Ascent contends that it is a common practice for courts to imply new rights into old leases. For instance, this Court has recognized leases may incorporate an implied covenant requiring the lessee to develop mineral interests (*St. Luke's United Methodist Church v. CNG Dev. Co.*, 222 W. Va. 185, 192, 663 S.E.2d 639, 646 (2008)); an implied covenant requiring a lessee to market oil and gas produced from a well (*Wellman v. Energy Res., Inc.*, 210 W. Va. 200, 211, 557 S.E.2d 254, 265 (2001)); or an implied obligation requiring the lessee to protect the leased premises from drainage by oil

7

and gas wells placed on adjacent property (Syl. pt. 1, *Adkins v. Huntington Dev. & Gas Co.*, 113 W. Va. 490, 168 S.E. 366 (1932)). Without an implied covenant permitting pooling or unitization, Ascent claims that the purpose of the 1980 oil and gas lease is thwarted, and that the oil and gas in the Marcellus shale will not be developed and will thus be wasted.

In response, the defendants characterize Ascent's position as "an expression of pure sophistry." The defendants point out that the mineral estate beneath the ninety-four-acre tract *has been* developed, can be further developed, and continues to produce, all without resort to pooling, unitization and horizontal drilling. The defendants contend that no purpose in the lease is being frustrated or thwarted because, when one examines the terms and conditions in light of when they were negotiated and signed in 1980, the lease is clear and the purpose of the lease is currently being achieved. They also point out that the cases in which this Court has implied a new covenant into a lease have all been covenants that inure to protect the lessor and impose an obligation upon the lessee; here, Ascent seeks the inverse, a covenant imposing new burdens on the lessor.

The defendants further argue that the circuit court correctly determined that it could not incorporate five new paragraphs of highly specific rights and obligations into an otherwise unambiguous lease. The language that Ascent seeks to imply into the lease was neither contemplated nor bargained for when the lease was signed in 1980. The circuit court found that inferring rights to pool and unitize "would materially alter the terms of the clear and unambiguous language of the [l]ease *without fair consideration for such terms*,"

and the defendants assert this finding is correct. The defendants argue that, at its core, Ascent wants to have this and other decades-old leases rewritten and converted into a portfolio of modern leases, all without paying the consideration paid in the current oil and gas market.[5] The defendants contend that the circuit court was right when it declared that "the parties need to return to the negotiating table to see if they can reach an amendment as to pooling for due consideration."

To begin, the 1980 lease at issue is "to be construed like any other contract." *Chesapeake Appalachia, L.L.C. v. Hickman*, 236 W. Va. 421, 434, 781 S.E.2d 198, 211 (2015).

> An oil and gas lease (or other mineral lease) is both a conveyance and a contract. It is designed to accomplish the main purpose of the owner of the land and of the lessee (or its assignee) as operator of the oil and gas interests: securing production of oil or gas or both in paying quantities, quickly and for as long as production in paying quantities is obtainable.

Syl. pt. 1, *McCullough Oil, Inc. v. Rezek*, 176 W. Va. 638, 346 S.E.2d 788 (1986). *See also*, *Teller v. McCoy*, 162 W. Va. 367, 383, 253 S.E.2d 114, 124 (1978) ("The authorities agree today that the modern lease is both a conveyance and a contract."); Phillip T. Glyptis, "Viability of Arbitration Clauses in West Virginia Oil and Gas Leases: It Is All About the Lease!!!," 115 W. Va.L.Rev. 1005, 1007 (2013) ("[A] lease is by definition a contract. All

---

[5] The 1980 lease requires the lessee "to pay rental at the rate of $4.00 per acre, per year ($376) . . . until, but not after, a well yielding royalty to the Lessors is drilled on the leased premises." Thereafter, the lease requires a payment equal to 1/8 of the value at the well of all oil and gas produced.

rights and protections are controlled by the principles of contract law and depend on the proper construction.").

Like a lease, this Court has held that deeds are also interpreted and construed under principles of contract law. *Faith United Methodist Church & Cemetery of Terra Alta v. Morgan*, 231 W. Va. 423, 443, 745 S.E.2d 461, 481 (2013) ("Deeds are subject to the principles of interpretation and construction that govern contracts generally."). We have often applied the principle that "[a] deed will be interpreted and construed as of the date of its execution." Syllabus Point 2, *Oresta v. Romano Bros., Inc.*, 137 W. Va. 633, 73 S.E.2d 622 (1952). *See also Bruen v. Thaxton*, 126 W. Va. 330, 340, 28 S.E.2d 59, 64 (1943) (When construing a deed, "[i]t goes without saying that the intent of the parties sought to be reached is [the] intent existing at the time the contract was made."). We have just as often said this principle applies to oil and gas leases. *See Energy Dev. Corp. v. Moss*, 214 W. Va. 577, 586, 591 S.E.2d 135, 144 (2003) (interpreting and construing oil and gas lease as of the date of its execution); *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 495, 128 S.E.2d 626, 634 (1962) (discussing use of a "universal custom" that existed "at the time of the making of the lease" to interpret lease). Accordingly, we hold that a lease will be interpreted and construed as of the date of its execution.

Before a lease may be interpreted and construed, a court must find that the lease is ambiguous. If the lease is not ambiguous and plainly expresses the intent of the parties, then it must be enforced according to that intent. "An oil and gas lease which is clear in its provisions and free from ambiguity, either latent or patent, should be considered

10

on the basis of its express provisions and is not subject to a practical construction by the parties." Syllabus Point 3, *Little Coal Land Co. v. Owens-Illinois Glass Co.*, 135 W. Va. 277, 63 S.E.2d 528 (1951). As we said in Syllabus Points 1 and 3 of *Cotiga Development Company*, 147 W. Va. at 484, 128 S.E.2d at 628:

> A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.
>
> It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.

In the instant case, the circuit court found that the 1980 lease was unambiguous, and we find no error in that conclusion. The lease contains no language suggesting that pooling and unitization were considered by the parties when they negotiated and executed the document.[6] The lease secured production of oil and gas in paying quantities, quickly, and for the last four decades has permitted production from the mineral estate under the ninety-four-acre tract without need for pooling and unitization.

This is not to say that pooling and unitization would not result in the production of greater quantities of oil and gas. The record supports Ascent's claim that

---

[6] *Compare Stern v. Columbia Gas Transmission, LLC*, No. 5:15CV98, 2016 WL 7053702 (N.D.W. Va. Dec. 5, 2016) (lease permitting operation "alone and conjointly with other lands for the production and transportation of oil and gas" supports finding lease permits pooling or unitization).

11

pooling the ninety-four-acre tract with surrounding tracts could permit the economical use of horizontal drilling. But the circuit court did not have the right to alter, pervert or destroy the clear meaning and intent of the parties to the 1980 lease. If the circuit court had inferred the existence of a covenant to pool or unitize, then it would have substantially and materially altered the anticipated burden on the estate.

In the absence of language in an oil and gas lease expressing a right to pool or unitize the lease with other mineral estates, this Court will not infer such a right. In the instant case, Ascent wants to impute a covenant to pool or unitize, accompanied by five paragraphs of specific rights and obligations, without paying additional consideration. The implied covenant Ascent seeks was neither contemplated nor bargained for when the lease was signed. Therefore, we find no error in the circuit court's decision refusing Ascent's invitation to rewrite the parties' lease.

## IV. Conclusion

We find no error in the circuit court's March 5, 2019, order, denying Ascent's motion for summary judgment and denying Ascent a favorable declaratory judgment.

Affirmed.

12